UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BISCHOFF,

                Plaintiff,        Civil Action No. 14-10022
                                         Honorable Stephen J. Murphy, III
                                         Magistrate David R. Grand
    v.

TONY GALLO, PETER LUCIDO,
VINCENZO MANZELLA, DENIS LEDUC,
GALLO RETAIL GROUP, LLC, JOHN DOE
MACOMB COUNTY SHERIFFS, and
10 JOHN OR JANE DOES,
                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
DENIS LEDUC'S MOTION TO DISMISS [2] AND DEFENDANTS
TOLLY GALLO, PETER LUCIDO, VINCENZO MANZELLA AND
GALLO RETAIL GROUP, LLC'S MOTION TO DISMISS [7],
DENY PLAINTIFF MICHAEL BISCHOFF'S MOTION FOR
SUMMARY JUDGMENT [15], AND DISMISS REMAINING
DOE DEFENDANTS *SUA SPONTE***

**I.    RECOMMENDATION**

Before the Court are Defendant Denis LeDuc's motion to dismiss *pro se* plaintiff Michael Bischoff's complaint against him [2], Defendants Tony Gallo, Peter Lucido, Vincenzo Manzella and Gallo Retail Group, LLC's (the "Gallo Defendants") motion to dismiss [7], and Bischoff's affirmative motion for summary judgment against all defendants [15], all referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the filings, the Court has determined that oral argument would not aid in the disposition of these motions, and it will decide them on the record before it. E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court RECOMMENDS granting LeDuc's and the Gallo Defendants' motions to dismiss [2, 7], denying Bischoff's motion for summary judgment [15], and dismissing

the remaining claims against the unidentified "Doe" defendants *sua sponte* pursuant to 28 U.S.C. § 1915(e).[1]

## II.   REPORT

### A.   Background

#### 1.   *Factual*[2]

This case originates from a commercial lease agreement dated April 29, 2010, for a carry-out pizza business space. Defendant Gallo Retail Group (GRG), owned by defendant Gallo, was the lessor of the space, and Bischoff's company, Group MRJ Inc., doing business as "Passport Pizza" ("MRJ"), was the tenant. [7, Ex. A]. Bischoff himself was not a party to the lease, but signed it on behalf of MRJ. (*Id.* at 23). Bischoff also signed a personal guaranty in favor of GRG in the event of MRJ's default. (*Id.* at 26-28) Defendant Tony Gallo signed for GRG. (*Id.* at 23). Beyond tendering the premises to MRJ, GRG was to provide two pieces of equipment: a

---

[1] On May 13, 2014, Bischoff moved to strike the Gallo Defendants' response to his motion, alleging the response was not timely filed. For the reasons stated in a separate Order issued today, the Court has denied Bischoff's motion to strike. [23].

[2] In considering the defendants' motions to dismiss, the Court takes as true all well-pleaded factual allegations in Bischoff's complaint, and draws all reasonable inferences in his favor. *Smith v. Wyeth*, 657 F.3d 420, 423 (6th Cir. 2011). Pursuant to Federal Rules of Civil Procedure 8 and 12, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). This applies also "when a document is referred to in the pleadings and is integral to the claims." *Commercial Money Ctr.*, 508 F.3d at 335-36. Further, where the plaintiff does not refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated without converting the motion to dismiss to one for summary judgment even though the complaint referred only to the "plan" and not the accompanying documents). Accordingly, the following factual background is comprised of facts taken from the complaint and from such ancillary documents, where noted.

2

used refrigerated prep table and a used dough mixer. (*Id.* at 1). The lease also provided that MRJ had the right to install its own equipment for use in operating the business, but upon removal of that equipment had a duty to repair the premises. (*Id.* at 7). Finally, the lease provided GRG with a security interest in "all improvements, personal property, general intangibles, inventory, furnishings, equipment and fixtures within the lease premises . . . to the full extent of [MRJ's] . . . interest therein" otherwise known as "collateral". (*Id.* at 22). Upon an event of default (defined elsewhere in the lease), GRG had the right to liquidate the collateral without being required to first file suit. (*Id.*).

According to the complaint, "Passport Pizza USA" and Bischoff purchased numerous pieces of equipment to outfit the premises, including ovens, coolers, racks, pots and pans, etc. (Cplt. at 2, ¶ 5). Bischoff alleges that MRJ had no interest in this equipment (and thus could not grant a security interest in the equipment) because it was solely owned by "Passport USA Inc."[3] (*Id.*, at ¶ 6). Bischoff alleges that he was in the process of remodeling the space (after a tenancy of approximately 38 months) when he was locked out by Gallo and GRG, without there being an institution of eviction proceedings. (*Id.* at 3, ¶ 11).

Bischoff alleges that the Gallo Defendants had a John Doe defendant from "Pop A Lock" change the premises' locks before instituting eviction proceedings. (*Id.* at ¶ 12). Bischoff then makes reference to an "eviction [that] was later dismissed," and alleges that Gallo and GRG filed

---

[3] This allegation is confusing for several reasons. First, it is not clear from the complaint who "Passport Pizza USA" or "Passport USA Inc." are, though Bischoff appears to refer to them interchangeably. Bischoff never identifies these specific entities, and the lease indicates that MRJ is a company doing business as "Passport Pizza." Second, Bischoff alleges that both he and Passport Pizza USA purchased the equipment (Cplt. at 2, ¶ 5), but then alleges that the equipment "was wholly owned by Passport USA Inc. (*Id.* at ¶ 6). Further, he claims to have attached a receipt for the equipment to his complaint as "Exhibit F," but no such exhibit was attached. (*Id.* at 2). According to the transcript of an August 26, 2013 hearing before Judge LeDuc, Bischoff testified that he, along with his wife and children, owned Passport Pizza. [17, Ex. A at 66].

3

a complaint against him in state district court, specifically alleging damages of $24,500 so as to remain under the district court's "jurisdictional cap" (which he alleges is $25,000). (*Id.* at ¶¶ 16, 21). Defendants Lucido and Manzella were attorneys for defendants Gallo and GRG in the eviction proceeding. (*Id.* at 6-8). On July 17, 2013, GRG moved in state district court against MRJ and Bischoff for possession of a number of pieces of equipment that it alleged MRJ and Bischoff removed from the premises illegally. [7, Ex. B]. The exhibit attached to the motion listed the equipment as including:

> all improvements, personal property, general intangibles, inventory, furnishings, equipment and fixtures within the leased premises . . .or at any time placed on or in the leased premises or used in connection with Debtor's business, including without limited, tables, chairs, shelving, kitchen equipment, freezers, coolers, ovens, and those items more particularly described below . . .

(*Id.*). Defendant LeDuc was the judge assigned to the case. On the same day the motion was filed, Judge LeDuc issued a temporary restraining order to prevent Bischoff from "damaging, destroying, concealing, disposing of or using so as to substantially impair its value, the [equipment]," and Bischoff was ordered to appear for a hearing on August 19, 2013. (*Id.*). Bischoff alleges he was never served with the temporary restraining order. (Cplt. at 3).[4]

On August 19, 2013, Judge LeDuc granted GRG's motion for possession pending judgment and ordered that all equipment removed by Bischoff and MRJ be returned to the premises with Bischoff and MRJ assuming all costs. [7, Ex. C]. He also ordered that GRG be deemed in possession of the premises and the lease was terminated. (*Id.*). Finally, he found that

---

[4] Bischoff apparently appealed (or attempted to appeal) the issuance of the temporary restraining order. An exhibit attached to the Gallo Defendants' motion to dismiss purports to be a September 25, 2013 order dismissing Bischoff's appeal based on failure to remedy a deficiency in his appeal. [7, Ex. D]. The order does not specifically state the nature of the appeal, but it does list the case number as being that of the state district court case at issue here, and the timing of the appeal appears to coincide with the issuance of the restraining order. (*Id.*).

4

Bischoff and MRJ violated the temporary restraining order by selling a cooler, but reserved ruling on the penalty for that conduct. (*Id.*). Bischoff alleges that Judge LeDuc found him "personally liable" for the lease, despite the fact that his guaranty allegedly expired in April 2013. (Cplt. at 3). The matter was set for a status/pre-trial conference on August 26, 2013. [7, Ex. C].

Bischoff alleges that at that time, defendants Lucido and Manzella cross-examined him using confidential and privileged information that he had previously disclosed to Manzella when Manzella had represented him in a prior unrelated matter. (Cplt. at 6-8). More specifically, Bischoff points to the following question he was asked at the hearing: "Q: Have you ever been involved with any civil or criminal litigation, sir?" (Cplt. at 7). Bischoff alleges that this question violated the attorney-client privilege, and that Manzella's representation of GRG and use of the confidential information violated the "Michigan Code of Professional Responsibility's" conflict of interest provisions. (*Id.*). Bischoff alleges that he moved to disqualify Manzella on these grounds, and, although not specifically alleged, the Court infers that LeDuc denied his motion. (*Id.* at 6).[5]

On August 26, 2013, Judge LeDuc held Bischoff in contempt for violating the temporary restraining order by selling a two-door cooler that he was required to keep until the case was concluded. Judge LeDuc fined Bischoff $3,000, which Bischoff was to pay before noon on August 27, 2013, or in the alternative ordered that Bischoff spend 30 days in jail. [7, Ex. E]. He ordered that a court officer take possession of the remaining equipment and that Bischoff be

---

[5] Bischoff also alleges he sought to disqualify both LeDuc and attorney Lucido on the basis of an appearance of impropriety due to the fact that LeDuc was the author of an article on prohibition in a magazine entitled "Macomb Now" which Lucido edited and published. (Cplt. 5-8). While not specifically alleged in the complaint, the Court infers by Bischoff's claims that both motions were denied.

responsible for all costs associated with that process. (*Id.*). He also issued orders regarding case scheduling. (*Id.*). Also on August 26, 2013, MRJ filed for bankruptcy in the Eastern District of Michigan Bankruptcy Court. [15, Ex. N]. On August 27, 2013, at 10:02 a.m. (two hours before his fine was due) Bischoff himself filed for bankruptcy in the same court. [7, Ex. F]. At 11:59 a.m., Bischoff moved to stay the state court proceeding based on his bankruptcy filing. (*Id.*). On October 8, 2013, on GRG's motion, the bankruptcy court lifted the automatic stay as to GRG. [7, Ex. J].

On November 7, 2013, Judge LeDuc issued an order permitting the sheriff or the court officer to seize the equipment at issue within 21 days and retain it. [7, Ex. G]. On December 16, 2013, Judge LeDuc issued an order again finding Bischoff in contempt for failing to pay his fine and pay the court officer for his fees. [7, Ex. H]. He held that Bischoff could avoid jail by paying $2,500 to the court officer by December 19, 2013. (*Id.*). In the same order, Judge LeDuc denied Passport USA Inc.'s motion to intervene in the matter. (*Id.*). Bischoff claims that at some point (it is unclear when) he was held against his will in either the police station or a holding cell, until he paid the fine. (Cplt. at 8-9).

### 2. *Procedural*

On January 3, 2014, Bischoff filed suit in this Court against defendants Gallo, Lucido, Manzella, LeDuc, Gallo Retail Group, LLC, Doe Macomb County Sheriffs and 10 unidentified John Does, claiming that they violated his constitutional right of access to the Courts by conspiring with one another to evict him from the premises without conducting a formal eviction proceeding as required by Michigan law. (Cplt. at 8). He also alleges that all defendants violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, by enforcing a contempt order in the face of that stay. Finally, he alleges pendant state law claims of unjust

enrichment, abuse of process, theft, burglary, false imprisonment, extortion, and kidnapping arising out of his alleged confinement in either the courthouse or the police department for his failure to pay his contempt fine.

Bischoff sues LeDuc in both his individual and official capacities, and alleges that LeDuc, Lucido, Manzella, GRG and Gallo, as private citizens, along with several unnamed police officers, who were state actors, "acted under 'color of state law' . . . joining said conspiracy" to deny Bischoff access to the courts. (Cplt. at 2).[6] He alleges jurisdiction under 28 U.S.C. § 1983 and 11 U.S.C. § 362. (*Id.* at 1-2, 8-9). He seeks both injunctive relief as well as $10,000,000.00 in damages. (*Id.* at 9).

On January 21, 2014, defendant LeDuc moved to dismiss Bischoff's complaint, claiming absolute immunity. [2]. On January 27, 2014, the Gallo Defendants moved to dismiss Bischoff's claims against them for failing to state a claim upon which relief could be granted. [7]. On April 14, 2014, Bischoff responded to both motions and, in the same filing, affirmatively moved for summary judgment. [15].

### B. Legal Standard

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[6] It is not clear whether any or all of the John Does 1-10 are alleged to be police officers. Bischoff's complaint does not specifically associate the John Doe defendants with the unnamed police officers he alleges participated in the conspiracy to violate his rights.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 129 S.Ct. at 1949. *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1949.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v.*

*Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

28 U.S.C. § 1915(e) requires a district court to screen cases filed by plaintiffs proceeding *in forma pauperis*, and to dismiss any complaint if at any time it determines that it either (1) is frivolous; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (a Court "shall dismiss the case *at any time* if the court determines that . . . the action . . . fails to state a claim upon which relief can be granted) (emphasis added); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (noting that while Congress enacted 28 U.S.C. §1915 to "ensure that indigent litigants have meaningful access to the federal courts," it also "recognized . . . that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits."); *see also Wilson v. Napoleon*, No. 10-13396, 2012 U.S. Dist. LEXIS 146447 (E.D. Mich. Oct. 11, 2012) (dismissing plaintiff's complaint *sua sponte* even after finding that it survived a motion to dismiss based on exhaustion of remedies).

### C. Analysis

#### 1. *LeDuc's Motion to Dismiss*

Bischoff alleges that LeDuc violated his constitutional right of access to the courts by: issuing unlawful orders against him, including a contempt order in violation of the automatic stay provision of the Bankruptcy Code; rejecting Passport USA Inc.'s motion to intervene; failing to permit removal of the case to circuit court where the damages claimed were actually above the jurisdictional cap and where Bischoff's own counterclaim damages were also above

the cap; and failing to recuse himself, or remove defendants Lucido and Manzella from the case due to conflicts of interest. (*Id.* at 2-8).[7]

Defendant LeDuc moves to dismiss Bischoff's complaint against him, claiming that, as a judicial officer, he is absolutely immune from suit. He argues that Bischoff's claims against him are entirely premised upon acts that he took within his duties as a judge – specifically issuing a number of orders in a case that was before him in which Bischoff was a party. The Court agrees.

The doctrine of judicial immunity protects judges from suits seeking monetary damages based on judicial acts performed under proper jurisdiction. *See id.*; *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997); *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). The principle of independent judicial decision-making "is so important to our system of jurisprudence that judicial immunity even extends to allegations of judicial acts done incorrectly, maliciously or corruptly." *Christmas*, 2008 WL 251995 at *6 (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Judicial immunity attaches so long as the act complained of was a judicial act (i.e., a function normally performed by a judge while dealing with the parties in his judicial capacity) and was not taken in the absence of all jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967); *Stump v. Sparkman*, 435 U.S. 39, 356-62 (1978).

The Supreme Court has articulated a two-prong test to determine whether an act is "judicial" in nature. *Stump*, 435 U.S. at 362. The Court must first consider whether the act is one that is "normally performed by a judge," and second, whether the parties dealt with the judge in his or her judicial capacity. *Id.*; *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The Sixth Circuit

---

[7] In a "rebuttal" brief, filed "in stanter" [18] Bischoff also claims that at some later point, LeDuc actually did recuse himself from the case, but not before making additional rulings against Bischoff, which he claims was in violation of the law. However, these allegations are not in his complaint and thus are not properly before the Court. At any rate, for the reasons discussed below, they are immaterial to the outcome of LeDuc's motion.

10

has explained that acts involving resolution of disputes among parties who have invoked the court's jurisdiction are the touchstone application of judicial immunity. *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir. 1997).

Bischoff alleges a conspiracy among LeDuc and others to deprive him of various constitutional rights. However the only acts Bischoff claims that LeDuc took in furtherance of the purported conspiracy involve his issuance of various court orders against Bischoff, including a temporary restraining order, a contempt order (which Bischoff alleges violated the Bankruptcy Code's automatic stay provision), an order denying his own recusal, an order denying the removal of GRG's attorneys from the case, and an order terminating the lease and effectively evicting him from the premises. These acts are clearly judicial in nature, and were within LeDuc's jurisdiction given the amount alleged to be in controversy. Accordingly, LeDuc is immune from suit with respect to claims arising out of these acts. *Baze v. Office of the AG*, No. 08-09, 2008 U.S. Dist. LEXIS 27290, *18 (E.D. Ky. Apr. 3, 2008) ("A judge's rulings on motions, even if they are detrimental to a litigant's case, constitute judicial action and are thus protected by judicial immunity."). Furthermore, while Bischoff alleges generally that LeDuc "conspired" with the other non-judicial defendants to deprive him of his constitutional rights, this allegation is insufficient to overcome immunity. *Eldbridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003) *citing Mowbray v. Cameron Co., Tex.*, 274 F.3d 269, 276 (5th Cir. 2001) ("It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity").

Bischoff's attempt to invoke this Court's jurisdiction over LeDuc through an allegation that LeDuc's actions violated the automatic stay provision of the Bankruptcy Code similarly

fails. Even if it were true that LeDuc's actions did violate the stay provision (an issue this Court need not reach), LeDuc would remain immune from suit for his judicial rulings on the subject. Whatever the proper process may be for Bischoff to prosecute a claim for violation of the stay, it is most certainly not appropriate for him to file an affirmative federal action against the individual state court judge who made the ruling against him. Just as with his other decisions discussed above, LeDuc remains immune from suit for any and all judicial actions whether or not those actions violated the law, so long as he was not "entirely without jurisdiction," which he was not. Therefore, Bischoff's claims against LeDuc should be dismissed

Finally, for the same reasons as noted above, Bischoff's state law claims, which allege that LeDuc, along with the other defendants, "violated state law of 'unjust enrichment,' 'abuse of process,' theft burglary, false imprisonment, extortion, kidnapping when they held him against his will at the courthouse/police station" after his bankruptcy petition was filed and the stay was put in effect, should be dismissed. (Cplt. at 8-9). A fair reading of the complaint fails to show any allegation that the alleged restraint placed upon Bischoff was the result of something other than enforcement of LeDuc's official court order. Again, since all of LeDuc's alleged conduct occurred in the exercise of his judicial duties, he is entitled to absolute immunity.

In sum, it is clear from the face of the complaint that LeDuc is entitled to absolute immunity on all of Bischoff's claims against him. Accordingly, LeDuc's motion to dismiss Bischoff's complaint should be granted, and Bischoff's claims against LeDuc should be dismissed with prejudice.

### 2. *Gallo Defendants' Motion to Dismiss*

The Gallo Defendants move to dismiss Bischoff's complaint under numerous theories: (1) Bischoff was not a tenant under the lease and thus was not evicted; (2) he can have no claim

for eviction under 42 U.S.C. § 1983 where the defendants were not acting under color of state law; (3) enforcement of a state court order finding Bischoff in contempt does not violate the Bankruptcy automatic stay; (4) the state court order was issued prior to Bischoff's filing of bankruptcy; and (5) this Court is not the proper forum (and Bischoff is not the proper party) to litigate a bankruptcy stay violation. The Court agrees that Bischoff's complaint does not allege facts sufficient to state a claim for relief under § 1983 against these defendants. Furthermore, the Court finds that there are no allegations that these defendants took any actions in violation of the automatic stay provision of the Bankruptcy code and therefore could not have violated that provision. Finally, the Court finds that Bischoff's state law allegations against these defendants fail to state a claim upon which relief can be granted.

42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States [] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." To recover under § 1983, the plaintiff must plead and prove that: (1) he suffered a deprivation of a right secured by the Constitution or laws of the United States, and (2) that deprivation was caused by a person acting under color of state law. *Savage v. City of Pontiac*, 743 F.Supp.2d 678, 683 (E.D. Mich. 2010) (citing *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003)). A § 1983 claim may not be maintained against a private party unless that "party's actions may be fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

Under these well-settled principles, it is clear that Bischoff's complaint fails to state a claim for relief under § 1983 because, although he alleges that the Gallo Defendants acted "under color of state law," none of the *facts* alleged support this bare legal conclusion. *Iqbal*, 129 S.Ct.

at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief). He has not alleged any facts that any of these defendants, all of whom are private citizens, acted with any authority attributable to the state. Therefore, Bischoff's claims against the Gallo Defendants under § 1983 fail to state a claim upon which relief can be granted and should be dismissed with prejudice. *See Hailey v. Metro*, 2009 WL 1393382, at \*2 (E.D. Mich. May 18, 2009) (dismissing purported § 1983 claims against Detroit News, Detroit Free Press and individual reporters under 28 U.S.C. § 1915(e)(2)(B) because none could be said to have acted "under color of state law.").

Bischoff's claim that the Gallo Defendants violated 11 U.S.C. § 362 similarly fails to state a claim for relief. Bischoff's complaint alleges no actions these defendants personally took that violated the automatic stay of the Bankruptcy Court. His only allegation is that they conspired generally with defendant LeDuc, who enforced a court order that allegedly violated the stay provision. This vague and conclusory allegation is not enough to state a claim against these defendants. *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Without alleging that these defendants took some independent action in violation of the stay provision, Bischoff's complaint does not state a claim upon which relief can be granted under 11 U.S.C. § 362. *Id.* Furthermore, although the Court does not address in detail the Gallo Defendants' arguments that this Court is not the correct forum, and Bischoff not the correct party, to prosecute a claim for violating the stay, that claim should nevertheless be dismissed with prejudice as the case law is clear that even where conduct is found to violate the automatic stay provision, such conduct can later be ratified through the Bankruptcy Court's relieving that party from the automatic stay. *Easley v. Pettibone Mich.*

14

*Corp.*, 990 F.2d 905, 909-910 (6th Cir. 1993). Here, the Bankruptcy Court granted GRG relief from the automatic stay on October 8, 2013. [7, Ex. J]. Thus any violation that may have occurred is no longer actionable.

Finally, although Bischoff claims that the Gallo Defendants, along with defendant LeDuc, violated numerous state laws when they "held [Bischoff] against his will," (Cplt. at 8), the only fact in his complaint supporting this claim is that at some point "the trial court" violated the automatic stay and "ordered [Bischoff] held in a holding cell" apparently until he paid his fine. (Cplt. at 4). The complaint makes no allegations that the Gallo Defendants played any part in this or took any actions that independently violated Bischoff's state law rights. Because Bischoff has failed to state a state law claim against these defendants upon which relief can be granted his claims against them should be dismissed. *Iqbal*, 129 S.Ct. at 1949. However, even if Bischoff's complaint did sufficiently state one or more state law claims, the Court would nevertheless recommend that it not exercise supplemental jurisdiction over these pendant state law claims where no independent federal question remains. In either case, the Court finds that these claims should be dismissed without prejudice. A federal district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Mario Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Here, in light of the foregoing discussion, these factors clearly favor dismissal without prejudice of any pendant state law claims Bischoff may have against the Gallo Defendants.

### *3.     Remaining Doe Defendants*

Bischoff's claims against the Doe defendants fail for numerous reasons. Bischoff has not sufficiently identified any of the Doe defendants, and no proof of service has been filed showing that any such persons have been served with process within the time allowed by the applicable federal rules. Fed. R. Civ. P. 4(c), (m).[8] A more substantive deficiency is that while Bischoff names as defendants to this action "Doe Macomb County Sheriffs" and "10 John or Jane Does," his complaint makes no specific claims against any John Doe defendants; Bischoff merely alleges that defendants "Macomb County Sheriffs" "showed up," apparently to assist in his eviction, and that another "Doe" who worked for "Pop A Lock" was hired by the Gallo Defendants to change the locks on the premises.[9] (Cplt. at 3, ¶¶ 12, 23). Bischoff does not allege that the Does were in any way part of the alleged conspiracy or that their actions independently violated his rights. Finally, Bischoff makes no claims against any other Doe defendants other than those cited above. Because Bischoff is proceeding *pro se*, this Court possesses the authority, under 28 U.S.C. § 1915(e)(2)(B), to dismiss his claims ***at any time*** if it determines that the complaint fails to state a claim upon which relief can be granted. Here, there is no question that Bischoff has failed to state any claim against the Doe defendants. Therefore,

---

[8] Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." Rule 4(m) provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

[9] The "Pop A Lock Doe" is not alleged to be a state actor, meaning that any § 1983 claim against him would be ripe for dismissal for the reasons discussed above. *Supra* at 13-14. And, to the extent that Bischoff has any potential state law claims against this person (or any other defendant, for that matter), the Court would recommend that the District Court not exercise supplemental jurisdiction over those claims for the reasons discussed above in relation to the Gallo Defendants. *See Landefeld v. Mario Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

16

his complaint against them should be dismissed *sua sponte*. However, because the Does have not even been identified, let alone served with process, the Court recommends that their dismissal be without prejudice.

### *4. Bischoff's Motion for Summary Judgment*

Because the Court recommends dismissing Bischoff's complaint in its entirety for failing to state a claim upon which relief can be granted, and on grounds of immunity, his motion for summary judgment should be denied as moot. *See Everett v. Shaheen, Jacobs & Ross, P.C.*, No. 11-11844, 2011 U.S. Dist. LEXIS 118875, *16-17 (E.D. Mich. Sept. 27, 2011) *adopted by* 2011 U.S. Dist. LEXIS 117626 (E.D. Mich. Oct. 12, 2011).

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant LeDuc's motion to dismiss **[2]** be **GRANTED** and that Bischoff's claims against him be **DISMISSED WITH PREJUDICE**. The Court further **RECOMMENDS** that the Gallo Defendants' motion to dismiss **[7]** be granted and that Bischoff's §1983 claims and his claims under the Bankruptcy Code against them be **DISMISSED WITH PREJUDICE** and his state law claims be **DISMISSED WITHOUT PREJUDICE**. The Court further **RECOMMENDS** that Bischoff's motion for summary judgment **[15]** be **DENIED AS MOOT**. Finally, the Court **RECOMMENDS DISMISSING SUA SPONTE WITHOUT PREJUDICE** Bischoff's claims against the Macomb County Sheriff John Does and John Does 1-10, pursuant to 28 U.S.C. § 1915(e)(2)(B).

Dated: May 20, 2014           s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
                                                  United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                                                            s/Eddrey O. Butts
                                                                                            EDDREY O. BUTTS
                                                                                            Case Manager

Dated: May 20, 2014